**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 12-cv-02749-MSK**

**R. KIRK MCDONALD,**

        **Plaintiff,**

**v.**

**J.P. MORGAN CHASE BANK, N.A.,
CITIBANK, N.A., and
CHASE FUNDING MORTGAGE LOAN ASSET BACKED CERTIFICATE 2002-4,**

        **Defendants.**

_____

**OPINION AND ORDER GRANTING, IN PART, MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss **(# 53)**, Mr. McDonald's response **(# 82)**, and the Defendants'' reply **(# 85)**.

## FACTS

The operative pleading is Mr. McDonald's *pro se* Amended Complaint **(# 44)**. Although the vast bulk of that pleading appears to be irrelevant to the actual claims, the Court gives that pleading the liberal construction required of all *pro se* pleadings. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). (The Court supplements this recitation with certain facts gleaned from the Defendants' motion, to the extent not inconsistent with Mr. McDonald's Amended Complaint.) At some point in the early 2000s, Mr. McDonald took out a loan from Defendant J.P. Morgan Chase Bank ("Chase") to purchase (or perhaps refinance an existing loan on) real property located in Littleton, Colorado. The repayment of the note was secured by lien reflected in a

Deed of Trust recorded against such property. At some point, Chase purportedly assigned the note to Defendant Citibank, or to the Defendant . . . Certificate 2002-4 (Mr. McDonald is of the belief that no such assignment(s) occurred, or that he was given insufficient notice of them.) By September 2012, Mr. McDonald had fallen into default on that loan, and Citibank commenced foreclosure proceedings on the property.

Mr. McDonald apparently sought to refinance the loan through governmental foreclosure relief services, but was unsuccessful. He contends, in part, that this was due to Defendants' refusal to disclose the actual holder of the note.  Although Mr. McDonald sought to enjoin the foreclosure proceedings in both state and federal courts, his requests were denied, and the property was sold at a public trustee foreclosure sale to Citibank.

The Amended Complaint delves into a variety of matters, but it appears that Mr. McDonald's primary contention is that Citibank lacked standing to commence the foreclosure proceeding and that the Defendants purposefully concealed the identity of the holder of his note in order to facilitate the foreclosure and to prevent him from obtaining foreclosure relief.  Mr. McDonald asserts a variety of claims: (i) conversion, in that the Defendants obtained the property via foreclosure sale without "disclos[ing] who the plaintiff's not holder was and is," and thus, lacked standing to pursue the foreclosure; (ii) "fraud on the court," in that the Defendants "concealed the note holder's address and contact information from the court and plaintiff" during the foreclosure proceedings; (iii) "conspiracy to defraud," based on essentially the same facts; (iv) civil conspiracy, on essentially the same facts; (v) "attempting to influence a public servant," in that the Defendants "presented . . . pleadings and other documents testifying the Banks as note holder," when, in fact, it was not, and thus, "attempted to influenced the Arapahoe County

District Court [and Public Trustee] by providing documents that were factually untruthful"; (vi) "willful and wanton negligence," in that the Defendants "knowingly supplied false information" and "knew that plaintiff would rely on the material false information"; (vii) unjust enrichment, in that Mr. McDonald was eligible for foreclosure deferral under C.R.S. § 38-38-805, but the Defendants nevertheless foreclosed on the property; (viii) breach of the covenant of good faith and fair dealing/breach of contract, in that the Defendants breached the terms of the promissory note by "refusing to convey note holder contact information"; (ix) "common law unconscionability," in that the "Defendant Banks' policies and practices during the contract period are and have been substantively and procedurally unconscionable" in various respects, including failing to disclose the identity of the note holder, refusing to permit Mr. McDonald to secure foreclosure deferral, and falsifying documents; (x) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, in that he submitted a new loan application to Chase (at an unspecified time), and Chase "fail[ed] to provide a good faith estimate for the new loan"; (xi) violation of RESPA in that no notice was provided to Mr. McDonald when Chase "securitized the plaintiff not into a pooled trust"; (xii) breach of C.R.S. § 38-38-305, in that the Defendants "refused to provide note holder and trustee contact information" despite Mr. McDonald qualifying for foreclosure deferral; and (xiii) breach of C.R.S. § 38-40-103, in that the Defendants refused to respond to written requests by Mr. McDonald for information about his loan.

The Defendants move to dismiss **(# 53)** Mr. McDonald's claims for lack of subject-matter jurisdiction, arguing that the foreclosure sale of Mr. McDonald's house was confirmed by the District Court of Arapahoe County, and thus, Mr. McDonald's claims here would implicate the

validity of that confirmation order in violation of the *Rooker-Feldman* doctrine. In the alternative, the Defendants request that the Court direct Mr. McDonald to amend his Complaint to provide a more clear and concise statement of his claims.

## ANALYSIS

### A. Standard of review

The Defendants' motion initially challenges the sufficiency of federal subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), *citing Holt v. United States,* 46 F.3d 1000, 1002-03 (10th Cir.1995). Here, the Defendants' motion does not dispute the facial sufficiency of Mr. McDonald's invocation of federal jurisdiction (apparently federal question jurisdiction under 28 U.S.C. § 1331), but alleges that doctrines of abstention prevent the Court from hearing the claims. Where a Rule 12(b)(1) motion challenges the facts underlying the invocation of jurisdiction, the Court may not presume the truthfulness of the complaint's factual allegations; rather, the Court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Sizova v. National Institute of Standards and Technology*, 282 F.3d 1320, 1324 (10th Cir. 2002). The party asserting the existence of subject matter jurisdiction– in this case, Mr. McDonald– bears the burden of proving such jurisdiction exists. *Montoya v. Chao*, 269 F.3d 952, 955 (10th Cir. 2002).

**B.** *Rooker-Feldman*

The *Rooker-Feldman* doctrine provides that federal courts lack jurisdiction over claims that would call into question a final judgment by a state court. *Adams v. EMC Mortg. Co.*, ___ Fed.Appx. ___, 2013 WL 5567886 (10th Cir. Oct. 10, 2013) (slip op.), *citing Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012). In other words, it "precludes a losing party in state court who complains of injury caused by the state court judgment from bringing a case seeking review and rejection of that judgment in federal court." *Dillard v. Bank of New York*, 476 Fed.Appx. 690, 691 (10th Cir. 2012), *citing Miller v. Deutsche Bank Nat'l Trus Co.*, 666 F.3d 1255, 1261 (10th Cir. 2012).

The doctrine is applicable only in limited circumstances. It applies only to federal suits filed <u>after</u> the state proceedings become final.[1] *D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*, 705 F.3d 1223, 1232 (10th Cir. 2013). It is not implicated simply because the federal claims seek relief that would be inconsistent with the state judgment; rather, success on the federal claims must require, either implicitly or explicitly, a finding that the state judgment was in error or invalid. *Campbell*, 682 F.3d at 1283.

Although the 10th Circuit has made clear that the *Rooker-Feldman* doctrine does not operate to preclude federal consideration of requests to enjoin a pending foreclosure sale under C.R.C.P. 120, *Miller*, 666 F.3d at 1261-62, it has repeatedly held that the doctrine is applicable to prevent federal attacks on a <u>completed</u> foreclosure – *i.e.* one in which the state court has

---

[1] "Finality," in this sense, occurs when either: (i) the state's highest available appellate court has reviewed and affirmed the judgment; (ii) the state action has reached a point where neither party is seeking further action; or (iii) all federal questions in the state court proceedings have been fully resolved, leaving only matters of state law or questions of fact for resolution. *Osguthorpe*, 705 F.3d at 1232 n. 12.

confirmed the Public Trustee's sale (or, at least one in which the redemption periods of C.R.S. § 38-38-501 have expired). *See Crowe v. Clark*, ___ Fed.Appx. ___, 2014 WL 92358 (10th Cir. Jan. 10, 2014); *Castro v. Kondaur Capital Corp.*, ___ Fed.Appx. ___, 2013 WL 5340779 (10th Cir. Sept. 25, 2013); *Dillard*, 476 Fed.Appx. 691-92.

Here, the record indicates that Mr. McDonald commenced this action on October 16, 2012, the day before the foreclosure sale took place. The focus of Mr. McDonald's initial Complaint (**# 1**) was seeking injunctive relief preventing the foreclosure sale from occurring. This Court denied the request for an injunction (as did the state court), and the Public Trustee sold the property to Citibank on October 17, 2012. The Public Trustee issued a Confirmation Deed to Citibank, pursuant to C.R.S. § 38-38-501, on December 11, 2012, vesting title in the property to Citibank as of that date. Mr. McDonald filed the instant Amended Complaint in this Court on February 13, 2013. The District Court for Arapahoe County confirmed the Public Trustee's sale of Mr. McDonald's property on March 25, 2013.

On these facts, the Court cannot initially agree with the Defendants that the *Rooker-Feldman* doctrine applies. As noted above, *Rooker-Feldman* applies only if the federal action is filed <u>after</u> the state court proceeding has become final. If one measures from the inception of the action, Mr. McDonald commenced this action before any foreclosure sale occurred. If one measures from the date of the current Amended Complaint, Mr. McDonald filed that document after the Public Trustee had issued a Confirmation Deed, but prior to the date of any state court action confirming the sale. In either circumstance, it is clear that Mr. McDonald's federal claims were filed before the state court proceeding became "final" as defined by *Osguthorpe*.

But *Osguthorpe* teaches that this does not conclude the inquiry. In *Osguthorpe*, as in this

case, the state court litigation had not concluded at the time the federal action was commenced. The 10th Circuit found that the federal court's invocation of *Rooker-Feldman* to dismiss the action was inappropriate. 705 F.3d at 1232 ("Because the state-court proceedings are not final, the Rooker–Feldman doctrine cannot by itself bar the federal district court from hearing Osguthorpe's suit"). However, the 10th Circuit proceeded to find that it would nevertheless have been appropriate for the federal court to abstain from hearing the federal claims during the pendency of the state court suit by invoking the *Colorado River* doctrine, which sometimes counsels a federal court to stay or dismiss a federal suit pending the resolution of a parallel state court proceeding. *Id.* at 1233. Were the state court foreclosure proceedings involving Mr. McDonald ongoing, this Court would likely have concluded that the factors governing *Colorado River* abstention would have required this Court to stay (if not dismiss) Mr. McDonald's claims here pending the conclusion of the foreclosure proceeding.

Had this Court stayed or dismissed Mr. McDonald's federal suit on *Colorado River* grounds until the state foreclosure proceeding was complete, the practical effect of doing so would place the Court in an appropriate circumstance to now correctly invoke the *Rooker-Feldman* doctrine. At this point in time, it appears that Mr. McDonald's foreclosure proceeding in the state court has reached conclusion, with the Arapahoe District Court having entered a final order confirming the sale.[2] Thus, with the state proceeding having become final, invocation of the *Rooker-Feldman* doctrine would now prevent this Court from hearing Mr. McDonald's

---

[2] Neither party addresses whether Mr. McDonald has appealed from or otherwise challenged the outcome of the foreclosure proceeding in state appellate courts. Assuming he was pursuing an appeal, this Court would likely fall back to declining to hear the instant matter pursuant to *Colorado River* abstention.

claims seeking to "unwind" the foreclosure (or hold the Defendants liable in damages for seeking and obtaining the foreclosure), just as the 10th Circuit held appropriate in cases like *Crowe*, *Castro*, and *Dillard*. Although a case like *Osguthorpe* suggests that the application of *Rooker-Feldman* is dictated strictly by the status of the state court proceeding at the time of the filing of the federal action, this Court sees little justification for allowing a party to forever circumvent the *Rooker-Feldman* doctrine simply by commencing suit in federal court prior to state court proceeding reaching its conclusion.[3] Accordingly, this Court finds that, because the state proceeding has now become final, it is appropriate at this point to invoke the *Rooker-Feldman* doctrine and dismiss any claims by Mr. McDonald to invalidate the state court foreclosure.

With one exception, all of Mr. McDonald's state-law claims fall within this category. As this Court reads those claims, a fundamental assumption underlies all of them: that Citibank lacked the authority to commence and pursue the foreclosure. Mr. McDonald's "conversion" claim implies that Citibank obtained title to the property unlawfully, even though it purchased the property through a judicially-confirmed foreclosure sale; the "fraud on the court" and various conspiracy claims suggest that Citibank misled the state court as to its standing to seek foreclosure, his breach of contract claim implies that the parties breached the contract by not disclosing the true holder of the note, despite the foreclosure proceeding implicitly finding that Citibank was the holder, etc.[4] Because relief on those claims would necessarily require this

---

[3] *Osguthorpe* indicates that the state proceeding was continuing at the time the 10th Circuit ruled. It gives no hint as to how the outcome might have been different if the state proceeding had resulted in a final judgment while the federal matter was still before the federal district court.
[4] The analysis with regard to Mr. McDonald's unjust enrichment claim is slightly more elaborate. That claim invokes C.R.S. § 38-38-801 *et seq.,* which provides that certain eligible borrowers may receive "foreclosure deferrals." The deferral is effectuated by a "foreclosure counselor" who, upon certifying the eligibility of a borrower, contacts the Public Trustee to

Court to find that Citibank was not the holder of the note and a proper party to commence and pursue the foreclosure proceeding, the claims are barred by *Rooker-Feldman*.

The one surviving state law claim is Mr. McDonald's contention that he made a request to the Defendants for information about his loan pursuant to C.R.S. § 38-40-103(2). That statute requires the servicer of his loan to respond to such a request within 20 days, and creates a private right of action for damages for violations. C.R.S. § 38-40-104. Mr. McDonald's Amended Complaint is admittedly vague as to when he made such a qualifying request, to whom, what information he requested, and what response (if any) he received. Because this claim simply entails an award of damages[5] for a loan servicer's refusal to provide information, it is entirely possible for Mr. McDonald to prevail on this claim without calling the validity of the foreclosure itself. Thus, this claim is not barred by the *Rooker-Feldman* doctrine.

Nor are Mr. McDonald's two claims pursuant to RESPA. Claim 10 alleges that Chase violated RESPA when Mr. McDonald submitted a loan application to it (at an unspecified time), and Chase "faile[d] to provide a good faith estimate for the new loan." Mr. McDonald invokes "RESPA 3500.6," which the Court understands to be an outdated reference to regulations now codified at 12 C.F.R. § 1024.6. Those regulations require that "the lender shall provide a copy of the special information booklet to a person from whom the lender receives . . a written

---

ensure that the foreclosure does not proceed. C.R.S. § 38-38-803(6). A finding that Mr. McDonald was, in fact, eligible for foreclosure deferral would entail a finding that the Public Trustee's sale was premature. Such a finding would necessarily invalidate the state court's confirmation of that sale, making even the unjust enrichment claim subject to *Rooker-Feldman*.

[5] Mr. McDonald alleges that the Defendants' failure to respond to his requests for information resulted in the foreclosure of his home. It is difficult, albeit not impossible, to envision a situation in which Mr. McDonald could recover actual damages he suffered due to the foreclosure under C.R.S. § 38-0-104, without actually finding that the foreclosure itself was improper.

application for a federally related mortgage loan." 12 C.F.R. § 1024.6(a). Such a claim does not implicate the state foreclosure proceedings, and thus, is not barred by *Rooker-Feldman*.[6]

Finally, Mr. McDonald's eleventh claim asserts a violation of "RESPA 3500.21," presumably a reference to 12 C.F.R. § 1024.21. That provision (which is no longer in effect[7]) previously provided certain disclosures that were required to be made when a mortgage loan was transferred from one servicer to another. This claim does not turn on whether or not Citibank's foreclosure was proper, and thus, this claim is not barred by *Rooker-Feldman*.

Accordingly, all of Mr. McDonald's claims, with the exception of the tenth, eleventh, and thirteenth claims for relief in the Amended Complaint are dismissed for lack of federal subject-matter jurisdiction under *Rooker-Feldman*.

### C. Dismissal and amendment

Although the Court agrees in general with the Defendants that Mr. McDonald's Amended Complaint is vague, conclusory, and filled with irrelevant material, it declines the Defendants' request that the Court require Mr. McDonald to replead them. As set forth above, only three claims remain. Each of them is fairly simple and straightforward. Mr. McDonald's Amended Complaint lacks certain details that might help to flesh out these claims, such as dates and contents of correspondence and identification of the correct Defendant, but the Court cannot say that the claims are so inscrutable that the Defendants are unable to meaningfully respond to

---

[6] The Court has some doubt that RESPA provides a private right of action for a lender failing to provide the booklet. RESPA's private right of action is set forth in 12 U.S.C. § 2614, and specifically relates to violations of 12 U.S.C. § 2605, 2607, and 2608. The "booklet" requirement is found at 12 U.S.C. § 2604, falling outside the scope of the private right of action. Nevertheless, because this issue has not been raised, the Court will not address it.

[7] The Court does not address when that rule was abolished or the effect that such abolition would have on Mr. McDonald's claim.

them. Moreover, the Court is unconvinced that a new round of pleading is an efficient way to develop these remaining claims, particularly given Mr. McDonald's prolixity. The Defendants can easily ascertain the specific facts underlying these claims with a set of targeted interrogatories or a brief deposition. To the extent the Defendants believe those claims cannot be proven, they may seek summary judgment as appropriate.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss **(# 53)** is **GRANTED IN PART**, insofar as the Court **DISMISSES** all of Mr. McDonald's claims in the Amended Complaint, with the exception of his tenth (RESPA), eleventh (RESPA), and thirteenth (C.R.S. § 38-40-103) claims for relief, for lack of subject-matter jurisdiction under *Rooker-Feldman*, and **DENIED IN PART**, insofar as the remaining three claims shall proceed to discovery.

Dated this 29th day of January, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge